# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| **v.** | : | **DATE FILED:** |
| **JAMES BELL** | : | **VIOLATIONS:** |
| | | **18 U.S.C. § 1349 (conspiracy to commit mail** |
| | : | **and wire fraud – 1 count)** |
| | | **18 U.S.C. § 1341 (mail fraud – 3 counts)** |
| | : | **18 U.S.C. § 1343 (wire fraud – 1 count)** |
| | | **Notice of forfeiture** |

# I N F O R M A T I O N

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times relevant to this information:

1.       The United States Golf Association ("USGA") was a non-profit organization with its headquarters in Liberty Corner, New Jersey, whose mission was to champion and advance the game of golf. The USGA was the governing body for golf in the United States and its territories, and Mexico, and it not only produced and interpreted the rules of golf and provided a national handicap system for golfers, it also conducted 14 national championship tournaments, including the U.S. Men's Open (the "U.S. Open"), U.S. Women's Open, and U.S. Senior Open. Certain USGA championship tournaments were ticketed events, including the U.S. Open.

2.     The U.S. Open was considered by many golf enthusiasts to be one of the highlights of the golf season. The U.S. Open was conducted by the USGA and was held in the United States in June of each year at select host venue clubs. It was one of the four major championships in men's golf. The U.S. Open was the largest revenue generating event for the USGA on an annual basis. The USGA sold various types of tickets to the U.S. Open, the pricing of which would range each year depending on the type of ticket offering, and would generally include: single day mid-week gallery admission tickets (starting at approximately $50 per ticket); full week gallery admission tickets (for approximately $500 per ticket); and single day, multi-day and week-long package tickets for its various club-levels, ranging from the "Trophy Club," which provided access to an on-site, air conditioned pavilion that offered food and beverage for purchase (starting at approximately $75 for a single-day mid-week ticket to approximately $245 for a weekend single-day ticket), to the "1895 Club," which provided all-inclusive access to a separate, on-site, air-conditioned pavilion featuring breakfast, buffet lunch with hot entrees, afternoon snacks and full bar service (starting at approximately $250 for a single-day mid-week ticket to approximately $585 for a single-day weekend ticket).

3.     The 2013 U.S. Open was held at the Merion Golf Club in Ardmore, Pennsylvania. The 2014 U.S. Open was held at the Pinehurst Resort in Pinehurst, North Carolina. The 2015 U.S. Open was held at Chambers Bay in University Place, Washington. The 2016 U.S. Open was held at the Oakmont Country Club in Oakmont, Pennsylvania. The 2017 U.S. Open was held at Erin Hills in Erin, Wisconsin. The 2018 U.S. Open was held at the Shinnecock Hills Golf Club in Southampton, New York. The 2019 U.S. Open was held at the Pebble Beach Golf Links in Pebble Beach, California.

4.      A ticket broker was a person or entity involved in the business of reselling tickets of admission to places of entertainment. Ticket brokers typically charged a premium in excess of the face value of the tickets. Tickets sold by a ticket broker might or might not be authorized by the official seller.

5.      The USGA sold tickets to certain championships, including the U.S. Open, through its website, through telephone calls to the USGA Admission's Office, or through select authorized ticket sellers. The USGA imposed strict limits on the number of tickets sold to any one person or entity to a maximum of approximately 20 tickets. The purpose of the limit was to maintain price integrity and to prevent ticket brokers and other persons from purchasing large batches of tickets and reselling them to the public.

6.      From 2013 through 2019, the USGA generated revenues of approximately $200,000,000 per year, with its two largest sources of revenue consisting of its sale of media rights to and ticket sales for admission to its national championship tournaments. The USGA relied on ticket sales to its championship events to continue operations and fulfill its mission. Ticket sales from 2013 through 2019 generated varying annual revenues from between approximately $16 million to approximately $25 million. Other revenue sources for the USGA included competitor entry fees, merchandise sold on-site at the championships, sales of corporate hospitality packages, corporate merchandise sales, royalties associated with the manufacture and sales of merchandise bearing USGA marks, and revenue from the sales of food and beverages.

7.      Co-conspirator Robert Fryer, charged separately, was employed by the USGA in the USGA Admissions Office. As a result of his employment, Fryer had access to U.S. Open tickets that the USGA maintained at its headquarters in Liberty Corner, New Jersey, and that the USGA maintained on-site at the various U.S. Open tournaments. Neither Fryer, nor any

other USGA personnel in the USGA Admissions Office, were ever authorized to provide tickets to USGA tournaments to individuals and/or ticket brokers at zero cost for resale on the secondary market. Similarly, neither Fryer, nor any other USGA personnel in the USGA Admissions Office, were ever authorized to sell USGA tournament tickets and keep the proceeds of those sales for their own benefit. Instead, all ticket sales were required to be made through the USGA as an entity, with all payments for tickets to be made to the USGA.

8.      In or about March 1989, defendant JAMES BELL incorporated Sherry's Theater Ticket Agency, Inc. ("Sherry's") as a Pennsylvania Close Corporation with a principal place of business in the Eastern District of Pennsylvania. From its inception, Sherry's operated as a secondary ticket marketing company (*i.e.*, ticket broker) doing business in the Eastern District of Pennsylvania, and defendant JAMES BELL served both as a corporate officer and owner of Sherry's.

9.      Defendant JAMES BELL sold tickets to various concerts and sporting events, including the U.S. Open, through Sherry's.

10.     PayPal Holdings Inc. ("PayPal") was a corporation with its headquarters in San Jose, California, engaged in the business of operating a worldwide online payment system that supports online money transfers and serves as an electronic alternative to traditional paper methods of making payment for goods and services. PayPal operated as a payment processor for online vendors and auction sites. Individuals and businesses established PayPal accounts that they could use to make and receive money transfers, including for the purchase or sale of merchandise or services. These PayPal accounts were typically linked to bank accounts at financial institutions from which and into which the PayPal customers could transfer funds.

11.     All transactions initiated through PayPal, whether transfers from one PayPal account holder to another, or transfers from one PayPal account holder's PayPal account to the account holder's linked bank account, were effectuated electronically, via the internet, through wire communication initiated from the log-in location of the PayPal account holder and transmitted electronically through wire communications to one of PayPal's data centers, which were located in Scottsdale, Arizona and San Jose, California, and then through PayPal's financial institution processor, Wells Fargo Bank, whose data center was located in Minneapolis, Minnesota.

12.     Defendant JAMES BELL maintained an account with PayPal through Sherry's ending in 7573 ("defendant BELL's PayPal account"), over which defendant BELL exercised control.

13.     Co-conspirator Robert Fryer maintained an account with PayPal ending in 5431.

14.     Co-conspirator Robert Fryer maintained a bank account at Santander Bank (formerly Sovereign Bank) ending in 1417 that was tied to his PayPal account.

15.     Co-conspirator Robert Fryer maintained a bank account at TD Bank ending in 1821.

16.     Co-conspirator Robert Fryer utilized a Gmail email account hosted by Google LLC ("Google"). Google did not maintain any data centers in Pennsylvania. Google maintained data centers in Alabama, North Carolina, South Carolina, Virginia, Tennessee, Georgia, Texas, Oklahoma, Ohio, Iowa, Nevada, and Oregon. All emails sent to or from a Gmail email account traveled electronically via wire from the location of origin, through one of the Google data centers.

## THE CONSPIRACY

17.     Beginning in or about January 2017 and continuing until in or about March 2020, in the Eastern District of Pennsylvania, the District of New Jersey, and elsewhere, defendant

## JAMES BELL

conspired and agreed, with others known and unknown to the United States Attorney, to commit offenses against the United States, that is, to devise a scheme to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing this scheme cause the transmission of wire and mail communications in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 1341 and 1343.

## MANNER AND MEANS

It was part of the conspiracy that:

18.     Co-conspirator Robert Fryer agreed with defendant JAMES BELL, and others known and unknown to the United States Attorney, that Fryer would sell U.S. Open tickets to defendant BELL and other co-conspirators, which defendant BELL and other co-conspirators understood Fryer had misappropriated from the USGA, in return for direct payments by the co-conspirators to Fryer.

19.     In advance of the 2017 U.S. Open that was held at Erin Hills in Erin, Wisconsin, and continuing each year through the 2019 U.S. Open tournament that was held at the Pebble Beach Golf Links in Pebble Beach, California, co-conspirator Robert Fryer provided defendant JAMES BELL with misappropriated tickets to each U.S. Open tournament, without the knowledge and consent of the USGA, from the USGA's headquarters in Liberty Corner, New

Jersey, and also on-site at various U.S. Open tournaments, through in-person meetings in the Eastern District of Pennsylvania and at various U.S. Open tournaments, and by shipping the tickets via private commercial interstate carriers, such as the United Parcel Service ("UPS") and Federal Express ("FedEx").

   20. Defendant JAMES BELL paid co-conspirator Robert Fryer for the U.S. Open tickets Fryer provided by giving Fryer cash and checks made payable to Fryer, and through transfers from defendant BELL's PayPal account to Fryer's PayPal account

   21. Defendant JAMES BELL sold the U.S. Open tickets provided by co-conspirator Robert Fryer for a profit.

   22. Defendant JAMES BELL communicated with co-conspirator Robert Fryer in interstate commerce by email, text, and telephone.

   23.  Co-conspirator Robert Fryer transferred funds he received from defendant JAMES BELL into his Santander Bank account ending in 1417.

   24. Co-conspirator Robert Fryer deposited checks he received from defendant JAMES BELL into his TD Bank account ending in 1821 in the Eastern District of Pennsylvania and elsewhere.

   25. Between in or about January 2017 and in or about June 2019, in connection with, and during and in advance of the 2017 through 2019 U.S. Open tournaments, co-conspirator Robert Fryer misappropriated and provided to defendant JAMES BELL a total of at least approximately 7,000 U.S. Open tickets, all without the knowledge and consent of the USGA.

   26. Between in or about January 2017 and in or about March 2020, defendant JAMES BELL paid co-conspirator Robert Fryer at least approximately $324,652 for

misappropriated U.S. Open tournament tickets, with a face value of at least approximately $1,282,000.

27.     Between in or about January 2017 and in or about June 2019, defendant JAMES BELL sold at least approximately 7,000 misappropriated 2017 through 2019 U.S. Open tournament tickets provided by co-conspirator Robert Fryer, with a face value of at least approximately $1,282,000, for at least approximately $922,886, for which defendant BELL paid Fryer at least approximately $324,652.

## OVERT ACTS

In furtherance of the conspiracy, and to achieve its objects, defendant JAMES BELL, and other co-conspirators known and unknown to the United States Attorney, committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1.     On or about February 22, 2017, defendant JAMES BELL sent a payment of approximately $8,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

2.     On or about March 16, 2017, defendant JAMES BELL sent a payment of approximately $5,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

3.     On or about May 2, 2017, defendant JAMES BELL sent a payment of approximately $7,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

4.     On or about May 3, 2017, defendant JAMES BELL sent a payment of approximately $3,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

5.      On or about June 2, 2017, co-conspirator Robert Fryer caused misappropriated 2017 U.S. Open tickets to be shipped via UPS (tracking number ending in 4061) from New Jersey to defendant JAMES BELL in the Eastern District of Pennsylvania.

6.      On or about August 8, 2017, defendant JAMES BELL sent a payment of approximately $12,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

7.      On or about September 26, 2017, defendant JAMES BELL sent a payment of approximately $8,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

8.      On or about November 3, 2017, defendant JAMES BELL sent a payment of approximately $8,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

9.      On or about November 13, 2017, defendant JAMES BELL sent a payment of approximately $7,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

10.      On or about December 14, 2017, defendant JAMES BELL sent a payment of approximately $15,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

11.      On or about January 22, 2018, defendant JAMES BELL sent a payment of approximately $6,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

12.     On or about February 23, 2018, defendant JAMES BELL sent a payment of approximately $8,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

13.     On or about May 2, 2018, defendant JAMES BELL sent a payment of approximately $6,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

14.     On or about May 16, 2018, defendant JAMES BELL sent a payment of approximately $8,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

15.     On or about June 1, 2018, co-conspirator Robert Fryer caused misappropriated 2018 U.S. Open tickets to be shipped via UPS (tracking number ending in 5659) from Alabama to defendant JAMES BELL in the Eastern District of Pennsylvania.

16.     On or about October 12, 2018, defendant JAMES BELL sent a payment of approximately $12,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

17.     On or about January 4, 2019, defendant JAMES BELL sent a payment of approximately $4,500 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

18.     On or about March 12, 2019, defendant JAMES BELL sent a payment of approximately $8,500 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

19.     On or about April 1, 2019, defendant JAMES BELL sent a payment of approximately $7,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

20.     On or about May 7, 2019, defendant JAMES BELL sent a payment of approximately $10,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

21.     On or about May 13, 2019, defendant JAMES BELL sent a payment of approximately $5,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

22.     On or about May 23, 2019, co-conspirator Robert Fryer caused misappropriated 2019 U.S. Open tickets to be shipped via UPS (tracking number ending in 5030) from New Jersey to defendant JAMES BELL in the Eastern District of Pennsylvania.

23.     On or about July 23, 2019, defendant JAMES BELL sent a payment of approximately $10,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

24.     On or about August 21, 2019, defendant JAMES BELL sent a payment of approximately $10,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

25.     On or about September 20, 2019, defendant JAMES BELL sent a payment of approximately $10,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

26.     On or about October 21, 2019, defendant JAMES BELL sent a payment of approximately $10,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

27.     On or about December 16, 2019, defendant JAMES BELL sent a payment of approximately $6,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

28.     On or about February 3, 2020, defendant JAMES BELL sent a payment of approximately $6,800 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

29.     On or about March 10, 2020, defendant JAMES BELL sent a payment of approximately $2,500 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH FOUR

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 16 of Count One are incorporated here.

### THE SCHEME

2.      Beginning in or about January 2017 and continuing until in or about March 2020, within the Eastern District of Pennsylvania, the District of New Jersey, and elsewhere, defendant

**JAMES BELL,**

together and with co-schemers known to the United States Attorney, devised and intended to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS

3.      Paragraphs 18 through 27 of the Manner and Means section of Count One are incorporated here.

### MAIL FRAUD

4.      On or about each of the following dates, in the Eastern District of Pennsylvania, and elsewhere, defendant

**JAMES BELL,**

alone and with co-schemers known to the United States Attorney, for the purpose of executing the scheme described above, and attempting to do so, knowingly caused to be delivered by mail and commercial interstate carriers, according to the directions thereon, the following items, each mailing constituting a separate count:

| COUNT | DATE | FROM | TO | DESCRIPTION OF ITEM |
|-------|------|------|-----|---------------------|
| TWO | 6/2/2017 | Bound Brook, NJ | Glen Mills, Pennsylvania | Misappropriated 2017 U.S. Open tickets, shipped via UPS, tracking number ending in 4061. |
| THREE | 6/1/2018 | Birmingham, Alabama | Glen Mills, Pennsylvania | Misappropriated 2018 U.S. Open tickets, shipped via UPS, tracking number ending in 5659. |
| FOUR | 5/23/2019 | Bound Brook, NJ | Garnet Valley, Pennsylvania | Misappropriated 2019 U.S. Open tickets, shipped via UPS, tracking number ending in 5030. |

All in violation of Title 18, United States Code, Section 1341.

## COUNT FIVE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.         Paragraphs 1 through 16 of Count One are incorporated here.

## THE SCHEME

2.         Beginning in or about January 2017 and continuing until in or about March 2020, within the Eastern District of Pennsylvania, the District of New Jersey, and elsewhere, defendant

**JAMES BELL,**

together and with co-schemers known to the United States Attorney, devised and intended to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

3.         Paragraphs 18 through 27 of the Manner and Means section of Count One are incorporated here.

## WIRE FRAUD

4.         On or about the following date, in the Eastern District of Pennsylvania, and elsewhere, defendant

**JAMES BELL,**

alone and with co-schemers known to the United States Attorney, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| COUNT | DATE | ORIGIN OF WIRE | TRAVELED INTERSTATE THROUGH | METHOD OF WIRE AND DESCRIPTION |
|-------|------|----------------|------------------------------|--------------------------------|
| FIVE | 2/23/2018 | Eastern District of Pennsylvania | PayPal data centers in Scottsdale, Arizona and/or San Jose, California | Transfer of approximately $8,000 via PayPal to co-conspirator Robert Fryer for misappropriated U.S. Open tickets |

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

      1.     As a result of the violations of Title 18, United States Code, Sections 1341, 1343, and 1349 set forth in this information, defendant

### JAMES BELL

shall forfeit to the United States of America any property constituting, or derived from, proceeds traceable to the commission of such offenses, including but not limited to $598,234 in United States currency (money judgment).

      2.     If any of the property described above, as a result of any act or omission of the defendant:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred to, sold to, or deposited with a third party;

      c.     has been placed beyond the jurisdiction of this Court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c) incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

      All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and 28 U.S.C. Section 2461.

                                                 for

**JENNIFER ARBITTIER WILLIAMS**
**ACTING UNITED STATES ATTORNEY**

17

*No.*_ _ _ _ _ _ _ _ _ _

## UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

<u>Criminal Division</u>

## THE UNITED STATES OF AMERICA

vs.

JAMES BELL

## INFORMATION

Counts:
18 U.S.C. § 1349 (conspiracy to commit mail and wire fraud – 1 count); 18 U.S.C. § 1341 (mail fraud – 3 counts); 18 U.S.C. § 1343 (wire fraud – 1 count); Notice of forfeiture

A true bill.

_____
Foreman

Filed in open court this _____ day,
Of _____A.D. 20_____
_____
Clerk

Bail, $_____